## Smith *et al.* *versus* Hogeland.

1. Plaintiffs, as agents for Morrison, exposed his property to public sale; it was struck down to Robb, who gave a negotiable note for $1000 for the first payment, with defendant as endorser, it being agreed that if Robb failed to comply with the conditions of sale, defendant might take his place in the sale.    Morrison endorsed the note as collateral for endorsement for him by plaintiffs; afterwards Robb's contract of purchase was rescinded. *Held.* that the fact that defendant was to have the right to take Robb's place would not affect the bona fides of the transaction.

2. That the plaintiffs had been the agents of Morrison in the sale to Robb would not affect their rights as holders of the note unless they assented to the rescission of the contract.

3. The court charged, that the plaintiff stood in the shoes of Morrison, and if there was an agreement between him and Robb to abandon the contract and release each other, the verdict should be for the defendant. *Held* to be error.

4. The original parties to commercial paper cannot by subsequent acts compromise the rights of the endorsees.

[Smith v. Hogeland.]

5. If the note were passed without consideration, or as security for an antecedent debt or endorsement, the plaintiffs occupied the same position as Morrison, and were entitled to his rights and no more.

6. Petrie v. Clark, 11 S. & R. 377, followed.

March 4th 1875.　Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON and PAXSON, JJ.

Error to the Court of Common Pleas of *Bucks county :* Of January Term 1873, No. 319.

This was an action of assumpsit, brought January 26th 1870, by Barclay J. Smith and Owen W. Worstall, trading as B. J. Smith & Co., against Isaac Hogeland.　The plea was " payment."

The action was founded on the following note :

" $1000.　　　　　　　　Newtown, Pa. 12 mo. 5th 1868."
On the first day of April next after date I promise to pay to the order of Isaac Hogeland, at the First National Bank of Newtown, one thousand dollars, without defalcation, for value received.　　　　　　　　　　　　　　　　C. F. ROBB."

Endorsed, " ISAAC HOGELAND, B. J. SMITH & Co."

This note was given for the first payment of the purchase-money of real estate of Judge Joseph Morrison, which had been struck down to C. F. Robb at public sale, the plaintiffs being the agents of Judge Morrison, and authorized to make the sale.

The plaintiffs having given the note in evidence, rested.

For the defendant and under objection and exception, the defendant's deposition was read in evidence.

He testified that he was at the sale in December 1868 ; the property contained ninety acres ; one of the conditions of sale was that ten per cent. of the purchase-money was to be paid down, or a note given for that amount.　Robb was there and said that that seemed too much money to pay down ; the property was then being bid at $197 per acre ; Robb said that was too cheap ; Smith, plaintiff, who was present, said he would make it easier, $1000 instead of $1800.　Robb bid $200 per acre, and it was struck off to him.　Smith then said that he wanted defendant to go security for Robb on the $1000 note.　Smith told defendant he could not lose, because the property was cheap, and if Robb failed to comply defendant might take the property himself ; defendant would not have put his name on the note, if it had not been for that.　In the next January Robb told defendant that he would not take the property ; in February defendant talked about the matter with Smith, whom he told that he would take the property, and asked about the payment ; he agreed to take for the first payment liens. amounting to $5000, which the defendant had on the property ; defendant did not then take the property ; about the 19th of March he saw Smith, and told him he wanted a deed for the property or

[Smith *v.* Hogeland.]

his note ;· Smith said that defendant could have the property ; that
it had been placed in his hands to sell whenever he could get $200
per acre for it ; but afterwards, before they separated, he said he
would like to see Judge Morrison first, who he thought would agree
to the sale ; in two or three days afterwards Smith told defendant
Morrison would not agree to let him have it ; the day the note fell
due defendant told Smith that he understood Morrison held defend-
ant for $1000, and Smith for $800. ˙ Smith said Morrison had
nothing against either of them ; defendants offer to take the place
stopped Morrison from getting any damages.   On the 13th of
March defendant asked Morrison if he would hold him for the
$1000 ; Morrison said he would ; defendant then said he would take
the place rather than pay the $1000 ; Morrison did not say much
to that, but a few days afterwards said witness had no right to take
the place.

Judge Morrison testified, that he did not think the authority of
plaintiffs to sell extended beyond the day of sale, and a few days
afterwards he had not given plaintiffs notice that he revoked their
authority.

The defendant gave evidence by several witnesses corroborating
his own testimony.

In rebuttal, Smith, one of the plaintiffs, testified that he had
become holder of the note by endorsing a note dated December
˙ 8th 1868, and payable on the next 1st day of April, for $650, for
Judge Morrison, which he afterward paid—for commission for sell-
ing the property, $180, and for government tax, the whole amount
being $870.34, with interest from August 23d 1869 ; at the time
he endorsed the note he told the judge he would do it and hold
the $1000 note as collateral.   At the sale, before the property was
knocked off, defendant told Robb if he would buy it, he, defendant,
would help him with the money ; witness did not make any effort .
to persuade defendant to become Robb's security ; Judge Morrison.
revoked plaintiff's authority in March ; witness, March 13th, asked
defendant if he would buy the place if Morrison would consent to
sell ; he said he would not, and he did not agree to take it until
the 19th or 20th of March, upon the condition that his money
then in the property should be used for the cash payment, and re-
quested witness to see Morrison ; Morrison declined it ; said he
had rented the property and could not give possession ; defendant
declined to take it subject to the lease ; Morrison never gave plain-
tiffs authority to sell between the day of the sale and the maturity
of the note.   Robb, on the 22d of February, told Morrison that he
would not take the property, and Morrison then drew up a writing,
which was signed by Robb, declining to take the property and re-
linquishing all right under the sale to him.

There was evidence corroborating Smith's testimony.   Also
much other evidence on both sides, which was conflicting.

[Smith *v.* Hogeland.]

The court, Watson, J., charged:— * * *

" It is contended on the part of the defendant that the contract by sale was abandoned and rescinded, by agreement of the parties, before the time fixed for its consummation. * * * You will remember what has been testified upon this subject and determine whether there was such an agreement to abandon the contract of sale and to release each other, by the parties to it. If there was, then all liability of either of the drawer of the note, Mr. Robb, or of the endorser, the defendant, would be extinguished as between him and Judge Morrison.

" In this connection, it is proper for the court to advert to the written notice given to Judge Morrison by Mr. Robb that he would not take the property, and relinquished all rights under the purchase; a copy of this paper has been given in evidence without objection; it is our duty to construe it, and our construction of it is binding upon you. We say to you that this paper does not of itself import any agreement of the parties to release each other, but it is for you to investigate and consider the testimony as to all the facts and circumstances connected with the giving of it, and what was said and done by the parties in relation to the matter, and to determine whether there was then, or at any other time before the date fixed for the carrying out of the contract of sale, a mutual verbal agreement to abandon the sale and to release each other.

" This paper of itself does not show any such agreement. The plaintiffs, however, claim that they are entitled to recover upon the note, even if a valid defence might have been made to it in the hands of Judge Morrison.

" When a promissory note is transferred before maturity to an innocent endorsee, for value, and without notice of any legal defence to it, such endorsee takes the note freed from any equities between the original parties, and may recover upon it, notwithstanding a complete defence may exist to its payment if it was in the hands of the original holder.

" Are the plaintiffs such innocent endorsees? According to the testimony of Mr. Smith, one of the plaintiffs, they were the agents for the sale of the property; the note was originally given to them as such agents, and has been in their possession or under their control ever since. They then had full knowledge of the consideration and purposes for which it was given, knew of all the circumstances attending it, and had notice of everything that might be set up or arise as a defence to its payment.

" We therefore say to you, that [if the plaintiffs took the note under these circumstances, then the defendant is entitled to avail himself of every defence which might have availed him if this suit had been brought in the name of Judge Morrison, instead of being

[Smith *v.* Hogeland.]

brought in the names of the plaintiffs, as it is.] That they did thus take it is admitted and testified by one of their number.

" The plaintiffs stand in the shoes of Judge Morrison; their right to recover is the same as would have been his—no more and no less. That they held the note as security for a less amount than is due upon it, will make no difference. If entitled to recover at all, they are entitled to recover the full amount of the note.

["Your verdict will depend upon your decision of the question: Was there an agreement between Judge Morrison and Mr. Robb to abandon the contract of sale and release each other from it before the time fixed for its consummation?"]

The verdict was for the defendants. The plaintiffs took a writ of error.

They assigned for error, amongst others, the parts of the charge in brackets.

*G. A. Jenks* and *B. H. Brewster* (with whom were *N. C. James* and *J. M. Shellenberger*), for plaintiff in error.—There was no evidence of the cancellation of the sale and it was error to submit that question to the jury: Snyder *v.* Wilt, 3 Harris 59; Stouffer *v.* Latshaw, 2 Watts 165; Miller *v.* Cresson, 5 W. & S. 301.

The plaintiffs having taken the note before it was due for a valuable consideration, are entitled to sue for the whole amount and hold the surplus as trustees for Morrison: Byles on Bills 134. The defendant cannot set up want of consideration, nor any equities between the original parties: Appleton *v.* Donaldson, 3 Barr 381; Lord *v.* Ocean Bank, 8 Harris 384; Work *v.* Kase, 10 Casey 138; Struthers *v.* Kendall, 5 Wright 214; Flanagan *v.* Farm. & Mech. Bank, 4 P. F. Smith 398. Even if plaintiffs knew what the consideration of the note was when it was given: Goddard *v.* Lyman, 14 Pick. 268. To destroy his right it must be shown he took the note *malâ fide:* Phelan *v.* Moss, 17 P. F. Smith 59.

*G. Lear* (with whom was *G. Ross*), for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, March 15th 1875.

The note in suit was drawn by C. F. Robb, to the order of Isaac Hogeland, and by him endorsed to Judge Morrison. About the fact that the consideration was one that was good and valuable, there is no dispute. That the endorser was to have the privilege of taking the property, for the purchase-money of which this note was given in part payment, if Robb, the vendee, failed to comply with the terms of sale, was of no significance whatever, as affecting the bona fides of the transaction. Neither could the

[Smith *v.* Hogeland.]

fact, that Smith & Co., to whom the note was passed, were the agents of Morrison in the sale of the land, compromise them as holders of the paper, unless it were also shown that they assented to the subsequent rescission of the contract, whereby Hogeland was deprived of the security to which he was entitled. It is therefore certain that the learned judge of the court below was mistaken when he instructed the jury, " the plaintiffs stand in the shoes of Judge Morrison; their right to recover is the same as his—no more and no less. Your verdict will depend upon your decision of the question, was there an agreement between Judge Morrison and Mr. Robb to abandon the contract of sale, and release each other from it, before the time fixed for its consummation ? If there was not such an agreement, your verdict should be for the plaintiffs for the amount of the note, with interest from its maturity, and costs of protest. If there was such an agreement, your verdict should be for the defendant."

In this statement of the law of the case, the position of Smith & Co., as bonâ fide holders for value, if such they were, is wholly ignored. Such is not the law governing commercial paper. The original parties thereto cannot thus compromise the rights of a subsequent endorsee or holder such paper.

If this note was passed to the plaintiffs by Morrison for some present consideration, as that they should hold it as security for the endorsement of the $655 note, or for advancements then made, the subsequent action of Morrison and Robb could not affect them, and they would be entitled to recover so much of the note in suit, and no more, as would cover their endorsement or advancement. If, on the other hand, it was passed to them without consideration, or as security for an antecedent debt or endorsement, they would occupy no better position than Morrison; they would be entitled· to his rights and nothing more: Petrie *v.* Clark, 11 S. & R. 377. These were questions for the jury, and should have been submitted for their consideration. The other exceptions are not sustained.

Judgment reversed, and a new *venire* ordered.